**Fill in this information to identify the case:**

Debtor 1        Anthony  Vasco

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: <u>Middle</u> District of PA

Case number   <u>19-04313 HWV</u>

## Form 4100R

# Response to Notice of Final Cure Payment                    10/15

According to Bankruptcy Rule 3002.1(g), the creditor responds to the trustee's notice of final cure payment.

| Part 1: | Mortgage Information |
| --- | --- |

**Name of Creditor:**      MIDFIRST BANK                                **Court claim no.** (if known):    4

**Last 4 digits** of any number you use to identify the debtor's account:     0227

**Property address:**
                          106 S Baltimore Street
                          Franklintown,  17323

| Part 2: | Prepetition Default Payments |
| --- | --- |

*Check one:*

☐ Creditor agrees that the debtor(s) have paid in full the amount required to cure the prepetition default on the creditor's claim.

☒ Creditor disagrees that the debtor(s) have paid in full the amount required to cure the prepetition default on the creditor's claim. Creditor asserts that the total prepetition amount remaining unpaid as of the date of this response is:                    $ <u>3,382.32</u>

| Part 3: | Postpetition Mortgage Payment |
| --- | --- |

*Check one:*

☒ Creditor states that the debtor(s) are current with all postpetition payments consistent with § 1322(b)(5) of the Bankruptcy Code, including all fees, charges, expenses, escrow, and costs.

The next postpetition payment from the debtor(s) is due on:        01 / 01 / 2025

☐ Creditor states that the debtor(s) are not current on all postpetition payments consistent with § 1322(b)(5) of the Bankruptcy Code, including all fees, charges, expenses, escrow, and costs.

Creditor asserts that the total amount remaining unpaid as of the date of this response is:

| | | | |
| --- | --- | --- | --- |
| a. | Total postpetition ongoing payments due: | (a) | $ _____ |
| b. | Total fees, charges, expenses, escrow, and costs outstanding: | + (b) | $ _____ |
| c. | **Total.** Add lines a and b. | (c) | $ _____ |

Creditor asserts that the debtor(s) are contractually obligated for the postpetition payment(s) that first became due on:

Document ID: 89ba8ff8f7cc18d3042b4b789947 2bf52f8a2b28a1c51b649676f13e9c60af29

Case 1:19-bk-04313-HWV    Doc 52    Filed 11/21/24    Entered 11/21/24 16:52:08    Desc
Main Document       Page 1 of 51

---

**Part 4:**  **Itemized Payment History**

If the creditor disagrees in Part 2 that the prepetition arrearage has been paid in full or states in Part 3 that the debtor(s) are not current with all postpetition payments, including all fees, charges, expenses, escrow, and costs, the creditor must attach an itemized payment history disclosing the following amounts from the date of the bankruptcy filing through the date of this response:

- all payments received;
- all fees, costs, escrow, and expenses assessed to the mortgage; and
- all amounts the creditor contends remain unpaid.

---

**Part 5:**  **Sign Here**

The person completing this response must sign it.  The response must be filed as a supplement to the creditor's proof of claim.

*Check the appropriate box::*

☐ I am the creditor.
☒ I am the creditor's authorized agent.

I declare under penalty of perjury that the information provided in this response is true and correct to the best of my knowledge, information, and reasonable belief.

Sign and print your name and your title, if any, and state your address and telephone number if different from the notice address listed on the proof of claim to which this response applies.

**x** /s/ *Brent J. Lemon*
Brent Lemon
21 Nov 2024, 15:42:07, EST

               Date      11/21/2024

KML Law Group, P.C.
701 Market Street, Suite 5000
Philadelphia, PA 16106
215-627-1322
bkgroup@kmllawgroup.com
Attorney for Creditor

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: Anthony Vasco III | **BK NO. 19-04313 HWV** |
| **Debtor(s)** | |
| | **Chapter 13** |
| **MIDFIRST BANK** | |
| **Movant** | **Related to Claim No. 4** |
| **vs.** | |
| Anthony Vasco III | |
| **Debtor(s)** | |
| Jack N Zaharopoulos, | |
| **Trustee** | |

**CERTIFICATE OF SERVICE**
**NOTICE OF FINAL CURE MORTGAGE PAYMENT**

I, Brent J. Lemon of KML Law Group, P.C., certify that I am, and at all times hereinafter mentioned was, more than 18 years of age and that on <u>November 21, 2024</u>, I served the above captioned pleading, filed in the proceeding on the parties at the addresses shown below:

<u>Debtor(s)</u>
Anthony Vasco III
PO Box 157
Franklintown, PA 17323

<u>Attorney for Debtor(s) (via ECF)</u>
Paul Donald Murphy-Ahles, Esq.
Dethlefs Pykosh & Murphy
2132 Market Street
Camp Hill, PA 17011

<u>Trustee (via ECF)</u>
Jack N Zaharopoulos
Standing Chapter 13 (Trustee)
8125 Adams Drive, Suite A
Hummelstown, PA 17036

Method of Service:  electronic means or first-class mail

Dated: <u>November 21, 2024</u>

**/s/ Brent J. Lemon**
Brent J. Lemon
Attorney I.D. 86478
KML Law Group, P.C.
BNY Mellon Independence Center
701 Market Street, Suite 5000
Philadelphia, PA 19106
(412) 475-8764
blemon@kmllawgroup.com

# U.S. Bankruptcy Court

# Middle District of Pennsylvania

Notice of Electronic Claims Filing

The following transaction was received from Lemon, Brent on 10/10/2024 at 3:09 PM EDT

[File another claim](#)

| | |
|---|---|
| **Case Name:** | Anthony Vasco, III |
| **Case Number:** | [1:19-bk-04313-HWV](#) |
| **Creditor Name:** | MidFirst Bank<br>C/O MidFirst Bank, Bankruptcy Dept<br>999 NW Grand Boulevard, #110<br>Oklahoma City, OK 73118-6077<br>MidFirst Bank<br>C/O MidFirst Bank, Bankruptcy Dept |
| **Claim Number:** | [Amended 4](#)    [Claims Register](#) |

**Amount Claimed:** $104,231.48
**Amount Secured:** $104231.48
**Amount Priority:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**Client Executed APOC- Vasco.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1009835235 [Date=10/10/2024] [FileNumber=18210863
-0] [c4d83e618998aba48fdb34a5b1615872daf41d0d2f8822c5519c0a87aee352e77
94889fc028a2cd6c7425361e93dfc7015c721fe67529556fa4865637975f3cf]]
**Document description:**Certificate of Service
**Original filename:**C:\fakepath\Vasco- COS.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1009835235 [Date=10/10/2024] [FileNumber=18210863
-1] [84003f481b483eb5fce5dfafd8e66124825c049c7471033ae4310cc48f2f9c1c2
28e7b7b8d06ad0416049f75196c0b0e3db3edc5c06d9e8e8b70a24055c46a27]]
**Document description:**Exhibit Stipulation Statement
**Original filename:**C:\fakepath\Stipulation Statement- Vasco.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1009835235 [Date=10/10/2024] [FileNumber=18210863

-2] [bbe90054d09fec23bc280b6db51e4e0b22b5e933088d6afbc2f52166ea14829e5
0d4109ef1fb8d7600c19b9cb7c438f646af206899b7a3b94b052d5a419b5203]]
**Document description:**Exhibit Filed Stipulation
**Original filename:**C:\fakepath\Filed Stipulation- Vasco.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1009835235 [Date=10/10/2024] [FileNumber=18210863
-3] [4bd301d2a049478f244800c7ac155357d44563902caf9b33f3f77267eab6295a3
85c90dc4bd6f8a980bcb0f3fda250399621703efb3732408d6b24c254fb2d6d]]
**Document description:**Exhibit Escrow Analysis
**Original filename:**C:\fakepath\EA- Vasco - Redacted.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1009835235 [Date=10/10/2024] [FileNumber=18210863
-4] [4aa341a709c94629b84aaecd24c620a4d3db55bcc4cb832b65a8ad5718f5a1cdc
05dac617c2b3374b6ebca3e696f4e5e7edea1f27f4763620d8f843a29d1cddc]]
**Document description:**Exhibit Loan Documents
**Original filename:**C:\fakepath\Loan Documents- Vasco- Redacted.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1009835235 [Date=10/10/2024] [FileNumber=18210863
-5] [16d3905dd6d4672a8e1276083b81d0d8f04c0e51577261f2b33bfb16e24e150f9
2361889905c609dc981747f956d9a62575ffb8b4aa42d0eee6efdcac2da208d]]

**1:19-bk-04313-HWV Notice will be electronically mailed to:**

Kevin S Frankel on behalf of Creditor JPMORGAN CHASE BANK, NATIONAL ASSOCIATION
pa-bk@logs.com

Brent J Lemon on behalf of Creditor MidFirst Bank
blemon@kmllawgroup.com

Kristen D Little on behalf of Creditor JPMORGAN CHASE BANK, NATIONAL ASSOCIATION
KRLITTLE@FIRSTAM.COM

Paul Donald Murphy-Ahles on behalf of Debtor 1 Anthony Vasco, III
pmurphy@dplglaw.com, kgreene@dplglaw.com

United States Trustee
ustpregion03.ha.ecf@usdoj.gov

Jack N Zaharopoulos
TWecf@pamd13trustee.com

Case 1:19-bk-04313-HWV_3- Doc 52   Filed 11/21/24   Entered 11/21/24 16:52:08   Desc
Main Document       Page 5 of 51

**1:19-bk-04313-HWV Notice will not be electronically mailed to:**

PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA 23541

Case 1:19-bk-04313-HWV   Doc 52   Filed 11/21/24   Entered 11/21/24 16:52:08   Desc
Main Document    Page 6 of 51

Fill in this information to identify the case:

Debtor 1    Anthony Vasco III

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the MIDDLE District of Pennsylvania

Case number   19-04313 HWV

Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:    Identify the Claim

| | |
|---|---|
| **1. Who is the current creditor?** | **MIDFIRST BANK** <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor _____ |
| **2. Has this claim been acquired from someone else?** | ☐ No <br> ☒ Yes.  From whom?  JPMorgan Chase Bank, N.A. |

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| **MidFirst Bank** <br> Name | Name |
| **999 NorthWest Grand Boulevard** <br> Number       Street | Number       Street |
| **Oklahoma City, OK 73118** <br> City       State       Zip Code | City       State       Zip Code |
| **1-800-654-4566** <br> Contact phone | Contact phone |
| Contact Email | Contact Email |

Uniform claim identifier for electronic payments in chapter 13 (if you use one): _____

| | |
|---|---|
| **4. Does this claim amend one already filed?** | ☐ No <br> ☒ Yes.   Claim number on court claims registry (if known) 4-1       Filed on **11/27/2019** <br> MM / DD / YYYY |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No <br> ☐ Yes.   Who made the earlier filing? _____ |

Official Form 410                                      Proof of Claim

6. Do you have any number you use to identify the debtor?

☐ No
☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor    0227

7. How much is this claim? $104,231.48

**Does this amount include interest or other charges?**

☐ No
☒ Yes Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001 (c)(2)(A).

8. What is the basis of the claim?

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

**Money Loaned**

9. Is all or part of the claim secured?

☐ No
☒ Yes. The claim is secured by a lien on property.
  Nature of property: **106 S Baltimore Street Franklintown, 17323**

☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

Basis for perfection: **Deed of Trust, Mortgage, Note**
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                    $_____

Amount of the claim that is secured:    $**104,231.48**

Amount of the claim that is unsecured:  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $**5,280.92**

Annual Interest Rate (when case was filed) **7.1250%**

☒ Fixed
☐ Variable

10. Is this claim based on a lease?

☒ No
☐ Yes. Amount necessary to cure any default as of the date of the petition.    $_____

11. Is this claim subject to a right of setoff?

☒ No
☐ Yes. Identify the property: _____

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☒ No | **Amount entitled to priority** |
|---|---|---|
| | ☐ Yes. *Check all that apply:* | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B) | |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(  ) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

**If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.**

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☒ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  10/9/2024
            MM / DD / YYYY

_____
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Madison | Graspo | |
|---|---|---|---|
| | First name | Middle name | Last name |

| Title | **Vice President** |
|---|---|

| Company | MidFirst Bank |
|---|---|
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |

| Address | 999 NW Grand Blvd |
|---|---|
| | Number    Street |
| | Oklahoma City, OK 73118 |
| | City         State    ZIP Code |

| Contact phone | _____ | Email | _____ |
|---|---|---|---|

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Anthony Vasco III | CHAPTER 13 |
| Debtor(s) | NO. 19-04313 HWV |

## CERTIFICATE OF SERVICE

I, the undersigned, attorney for MIDFIRST BANK do hereby certify that true and correct copies of the foregoing Proof of Claim have been served <u>October 10, 2024</u>, by electronic filing upon those listed below:

<u>Attorney for Debtor(s)</u>
Murphy-Ahles, Paul Donald
Dethlefs Pykosh & Murphy
2132 Market Street
Camp Hill, PA 17011

**Bankruptcy Trustee**

Jack N Zaharopoulos
Standing Chapter 13 (Trustee)
8125 Adams Drive, Suite A
Hummelstown, PA 17036

Date: <u>October 10, 2024</u>

<u>**/s/ Brent J. Lemon**</u>
Brent J. Lemon
Attorney I.D. 86478
KML Law Group, P.C.
BNY Mellon Independence Center
701 Market Street, Suite 5000
Philadelphia, PA 19106
(484) 266-0832
blemon@kmllawgroup.com

**Statement of Payment(s)/Fee(s) Due added to the Plan after the Petition Date**


Debtors: Anthony Vasco III

Last 4 digits to identify the Debtor:   0227

Creditor Name: MIDFIRST BANK

Case Number: 19-04313 HWV

Arrears Listed in filed POC                    $1,898.60


Number of Payment(s) due             2 @ 879.76 each, 2 @ 913.50 each

Total amount of Payment(s) due       $3,586.52

Suspense Balance                              ($204.20)


Total amount added from stipulation     $3,382.32


Total amount to cure default

After the petition date added to

the Proof of Claim                            $5,280.92


*Add this total to the Official Form 410 Item 9 of Proof of Claim form*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: Anthony Vasco III | | CHAPTER 13 |
| | Debtor | |
| MIDFIRST BANK | | |
| | Moving Party | |
| vs. | | CASE NO. 1:19-bk-04313-HWV |
| Anthony Vasco III | | |
| | Debtor | |
| | | 11 U.S.C. Section 362 |
| Jack N Zaharopoulos | | |
| | Trustee | |

### ORDER

Upon consideration of the Motion for Relief from the Automatic Stay filed by MidFirst Bank, Doc. 41, and it appearing that the parties have resolved this matter via Stipulation, Doc. 45, it is

**ORDERED** that the Stipulation is **APPROVED**. This Court retains discretion regarding entry of any further Order.

By the Court,

Henry W. Van Eck, Chief Bankruptcy Judge
Dated: September 6, 2024

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Anthony Vasco III | | CHAPTER 13 |
| | Debtor(s) | |
| MIDFIRST BANK | | |
| | Moving Party | |
| vs. | | NO. 19-04313 HWV |
| Anthony Vasco III | | |
| | Debtor(s) | |
| Jack N Zaharopoulos | | 11 U.S.C. Section 362 |
| | Trustee | |

### STIPULATION

AND NOW, it is hereby stipulated and agreed by and between the undersigned as follows:

1.      As of August 9, 2024, the post-petition arrearage on the mortgage held by Movant on Debtor's residence is **$3,382.32**. Post-petition funds received after August 9, 2024, will be applied per the terms of this Stipulation as outlined herein. The arrearage is itemized as follows:

| | |
|---|---|
| Post-Petition Payments: | May 2024 through June 2024 at $879.76 each |
| | July 2024 through August 2024 at $913.50 each |
| Suspense Balance: | ($204.20) |
| **Total Post-Petition Arrears:** | **$3,382.32** |

2.      The Debtor shall cure said arrearages in the following manner:

a). Within seven (7) days of the filing of this Stipulation, Debtor shall file an Amended Chapter 13 Plan to include the post-petition arrears of **$3,382.32**.

b). Movant shall file an Amended or Supplemental Proof of Claim to include the post-petition arrears of **$3,382.32** along with the pre-petition arrears.

c). The new 410A form for a Proof of Claim shall not be required for this Amended or Supplemental Proof of Claim.

3.      Beginning with the payment due September 2024 and continuing thereafter, Debtor shall pay to Movant the present regular monthly mortgage payment of **$913.50** (or as adjusted pursuant to the terms of the mortgage) on or before the first (1st) day of each month (with late charges being assessed after the 15th of the month).

4.      Should Debtor provide sufficient proof of payments made, but not credited (front & back copies of cancelled checks and/or money orders), Movant shall adjust the account accordingly.

5.    In the event the payments under Section 3 above are not tendered pursuant to the terms of this Stipulation, Movant shall notify Debtor and Debtor's attorney of the default in writing and the Debtor may cure said default within FIFTEEN (15) days of the date of said notice. If Debtor should fail to cure the default within fifteen (15) days, Movant may file a Certification of Default with the Court and the Court shall enter an Order granting Movant relief from the automatic stay and waiving the stay provided by Bankruptcy Rule 4001(a)(3).

6.    If the case is converted to Chapter 7, Movant shall file a Certification of Default with the Court and the Court shall enter an order granting Movant relief from the automatic stay.

7.    If the instant bankruptcy is terminated by either dismissal or discharge, this agreement shall be null and void, and is not binding upon the parties.

8.    The provisions of this Stipulation do not constitute a waiver by Movant of its right to seek reimbursement of any amounts not included in this Stipulation, including fees and costs, due under the terms of the mortgage and applicable law.

9.    The undersigned seeks court approval of this Stipulation.

10.    The parties agree that a facsimile signature shall be considered an original signature.


Date:    September 4, 2024          /s/ Brent J. Lemon
                                    Brent J. Lemon, Esquire
                                    Attorney for Movant


Date: _9/5/2024_

                                    Paul Donald Murphy-Ahles, Esq.
                                    Attorney for Debtor


Date: _9/6/2024_

                          For    Jack N. Zaharopoulos, Staff Attorney
                                 Chapter 13 Trustee



| | |
|---|---|
| **Customer Service Center** | **1-800-848-9136** |
| Monday - Friday | 8 a.m. - 12 a.m.(ET) |
| Saturday | 8 a.m. - 8 p.m. (ET) |
| Hearing Impaired (TDD) | **1-800-582-0542** |

chase.com

ANTHONY VASCO III
PO BOX 157
FRANKLINTOWN, PA    17323-0157

### Escrow: Taxes and Insurance Statement

| | |
|---|---|
| Loan Number | █████████ |
| Statement Date | 09/19/2019 |
| Review Period | 11/2018 to 10/2019 |
| **Escrow Shortage** | **$46.23** |

### Why am I getting this statement?

You are getting this statement because you have an escrow account. That is a special account that we provide for you to pay your property taxes and/or insurance. It is also known as an Annual Escrow Account Disclosure Statement. With an escrow account, you pay a portion of your taxes and/or insurance monthly instead of once or twice a year. Monthly, part of your monthly mortgage payment goes into your escrow account. When your taxes and/or insurance premiums are due, we pay those bills for you with the money in your escrow account.

Once a year, we are required by law to review your escrow account. This statement includes the results of our review. It includes a history of the activity on your account this year and the activity expected for next year.

For more information about escrow, visit **chase.com/ManageMyMortgage.**

### Monthly Home Loan Payment

| | Current Payment | New Payment Effective 11/01/2019 |
|---|---|---|
| Principal & Interest | $1,483.51 | $1,483.51 |
| Escrow Account Deposit | $368.86 | $362.53 |
| Plus: Account Balance/Shortage | $0.00 | $3.85 |
| **Total Payment Amount** | **$1,852.37** | **$1,849.89** |

Chase automatic mortgage payment customers: If your mortgage payment amount changes after an escrow analysis, we'll adjust your payment for you. **Other online bill payment service or military allotment customers:** If your mortgage payment changes after an escrow analysis, you will need to contact your financial services provider to adjust your payment.

### Summary

**Your escrow account is short $46.23.**

There are many possible reasons for your shortage. Some common reasons include: increases in property taxes and/or insurance premiums, tax reassessments, insurance carrier changes, due date changes, fewer than expected escrow deposits. For more information, call us at the number listed above.

Your escrow account will fall $46.23 short of the minimum required balance of $725.06 in the next 12 months.

**You have three options to pay the shortage:**

| | |
|---|---|
| **Option 1:** | **Pay All of the shortage now.** |
| | Use the Escrow Shortage Payment Coupon below. If you pay all of your shortage by 11/01/19, your monthly mortgage payment will be $1,846.04 starting 11/01/19. |
| **Option 2:** | **Pay part of the shortage now.** |
| | Use the coupon below. The part you don't pay now will be divided evenly and added to your mortgage payment each month. You will see the adjusted amount due in your next statement. |
| **Option 3:** | **Pay nothing now.** |
| | The $46.23 will be divided among the next 12 months. We will add $3.85 to your monthly mortgage payments. Your new monthly payment will be $1,849.89 starting 11/01/19. |

▼ Please detach and return the bottom portion of this statement with your payment using the enclosed envelope. ▼

<div style="writing-mode: vertical">Page 1 of 3</div>



ANTHONY VASCO III

| | |
|---|---|
| Loan Number | █████████ |
| Statement Date | 09/19/2019 |
| **Escrow Shortage** | **$46.23** |

**Important: Please return this coupon with your check.**

CHASE
PO BOX 78420
PHOENIX AZ  85062-8420

### Escrow Payment Options

I understand that my taxes and/or insurance has increased and that my escrow account is short $46.23. I have enclosed a check for:

☐ **Option 1:** $46.23, the total shortage amount. I understand that if this is received by 11/01/19 my monthly mortgage payment will be $1,846.04 starting 11/01/19.

☐ **Option 2:** $ _____, part of the shortage. I understand that the rest of the shortage will be divided evenly and added to my mortgage payment each month.

☐ **Option 3:** You do not need to do anything if you want to have all of your shortage divided evenly among the next 12 months.

Make your check payable to Chase and please include your loan number on your check.

## Balancing Your Escrow Account

There needs to be enough money in your escrow account to pay your property taxes and/or insurance. To do that, federal law allows us to require that you keep a minimum balance in your account. This cash reserve helps to cover any increase in taxes and/or insurance. Subject to state law limits, your minimum balance normally equals the amount of your escrow payments for about two months.

The payments made to and from your escrow account last year help predict your account activity for next year. This year's activity also helps predict what your lowest account balance is likely to be.[1]

To balance your escrow account, we compare what your lowest account balance will likely be next year with your minimum required balance. The difference between those two numbers tells us if you need to pay a shortage or if we need to give you a surplus refund.

| | |
|---|---|
| $725.06 | Your minimum required balance |
| $678.83 | Your estimated lowest account balance for 2020[1] |
| **$46.23** | **Your escrow account shortage** |

[1] See the "Estimated Escrow Account Activity" chart in this statement.

## Escrow Account History

The chart below compares this year's activity on your escrow account with our estimates. The estimated amounts came from your last escrow account review.

- ■ Your most recent mortgage payment due was $1,852.37. Your mortgage payment includes principal and interest $1,483.51 and escrow money $368.86.

- ■ At the time of your last escrow account review, your expected lowest balance was $719.28. The chart below shows that your actual lowest escrow balance was $666.14.

Note: changes in property taxes or insurance premiums create the difference between the estimated and actual amounts in the chart. An "E" in the chart below means expected activity that hasn't occurred yet.

*Indicates a difference between the estimated and actual amounts.

### This Year: November 2018 to October 2019

| Date | Activity | Estimated Amount | Actual Amount | | Estimated Escrow Balance | Actual Escrow Balance |
|---|---|---|---|---|---|---|
| | Starting Balance | | | | $1,438.54 | $1,327.87 |
| 11/2018 | Deposit | $359.64 | $368.86 | * | $1,798.18 | $1,696.73 |
| 12/2018 | Deposit | $359.64 | $368.86 | * | $2,157.82 | $2,065.59 |
| 01/2019 | Deposit | $359.64 | $368.86 | * | $2,517.46 | $2,434.45 |
| 02/2019 | Deposit | $359.64 | $368.86 | * | $2,877.10 | $2,803.31 |
| 03/2019 | Deposit | $359.64 | $368.86 | * | | |
| | Withdrawal - BOROUGH TAX | $986.14 | $986.14 | | $2,250.60 | $2,186.03 |
| 04/2019 | Deposit | $359.64 | $368.86 | * | | |
| | Withdrawal - HOMEOWNER IN | $1,201.97 | $1,174.95 | * | $1,408.27 | $1,379.94 |
| 05/2019 | Deposit | $359.64 | $368.86 | * | $1,767.91 | $1,748.80 |
| 06/2019 | Deposit | $359.64 | $368.86 | * | $2,127.55 | $2,117.66 |
| 07/2019 | Deposit | $359.64 | $368.86 | * | $2,487.19 | $2,486.52 |
| 08/2019 | Deposit | $359.64 | $368.86 | * | | |
| | Withdrawal - SCHOOL TAX | $2,127.55 | $2,189.24 | * | $719.28 | $666.14 |

**(Continued)**



| | |
|---|---|
| Loan Number | |
| Statement Date | 09/19/2019 |
| Review Period | 11/2018 to 10/2019 |
| **Escrow Shortage** | **$46.23** |

ANTHONY VASCO III
PO BOX 157
FRANKLINTOWN, PA    17323-0157

### This Year: November 2018 to October 2019 (continued)

| Date | Activity | Estimated Amount | Actual Amount | Estimated Escrow Balance | Actual Escrow Balance |
|---|---|---|---|---|---|
| 09/2019 | Deposit | $359.64 | $368.86  * | $1,078.92 | $1,035.00 |
| 10/2019 | Deposit | $359.64 | $368.86  E | $1,438.56 | $1,403.86 |
| | Total Deposits | $4,315.68 | $4,426.32 | | |
| | Total Withdrawals | $4,315.66 | $4,350.33 | | |
| | Account Balance as of 10/2019 | | | | $1,403.86 |

### Expected Escrow Account Activity

The chart below estimates your escrow account balance for the next 12 months with your new monthly escrow account deposit of $362.53 and any anticipated withdrawals. The chart shows that you will reach your estimated lowest account balance of $678.83 in August 2020 (highlighted below). That is $46.23 short of your minimum required balance of $725.06.

### Next Year: November 2019 to October 2020

| Date | Activity | Estimated Amount | Actual Amount | Estimated Escrow Balance | Actual Escrow Balance |
|---|---|---|---|---|---|
| | Starting Balance | | | | $1,403.86 |
| 11/2019 | Deposit | $362.53 | | $1,766.39 | |
| 12/2019 | Deposit | $362.53 | | $2,128.92 | |
| 01/2020 | Deposit | $362.53 | | $2,491.45 | |
| 02/2020 | Deposit | $362.53 | | $2,853.98 | |
| 03/2020 | Deposit<br>Withdrawal - BOROUGH TAX | $362.53<br>$986.14 | | $2,230.37 | |
| 04/2020 | Deposit<br>Withdrawal - HOMEOWNER IN | $362.53<br>$1,174.95 | | $1,417.95 | |
| 05/2020 | Deposit | $362.53 | | $1,780.48 | |
| 06/2020 | Deposit | $362.53 | | $2,143.01 | |
| 07/2020 | Deposit | $362.53 | | $2,505.54 | |
| 08/2020 | Deposit<br>Withdrawal - SCHOOL TAX | $362.53<br>$2,189.24 | | $678.83 | |
| 09/2020 | Deposit | $362.53 | | $1,041.36 | |
| 10/2020 | Deposit | $362.53 | | $1,403.89 | |
| | Total Estimated Deposits | $4,350.36 | | | |
| | Total Estimated Withdrawals | $4,350.33 | | | |
| | Estimated Account Balance as of October 2020 | | | $1,403.89 | |

### Expected Escrow Account Payments

This section reflects the escrow activity that is expected to occur in the next 12 months.  The "Total Tax and Insurance Monthly Payment Amount" at the bottom of this chart is your new monthly escrow deposit, as listed on page 1 of this statement.

| Tax | | | Insurance | | |
|---|---|---|---|---|---|
| Item | Annual Expense | Anticipated Date(s) of Payment | Item | Annual Expense | Anticipated Date(s) of Payment |
| BOROUGH TAX | $986.14 | March 20 | HOMEOWNER IN | $1,174.95 | April 20 |
| SCHOOL TAX | $2,189.24 | August 20 | | | |

**Total Tax and Insurance Monthly Payment Amount = $362.53**

Page 2 of 3

**This Page Intentionally Left Blank**



## CHASE

A QUICK GUIDE TO UNDERSTANDING YOUR

# Annual Escrow Analysis



**Current Monthly Mortgage Payment**

**New Monthly Mortgage Payment**

**Escrow Account Summary**
This section shows that your escrow account has a shortage and explains your options. You can make a one-time payment now, pay part of the shortage now or have the shortage payment spread evenly across next year's mortgage payments.

**Escrow Shortage Coupon**
Use this coupon if you mail a full or partial payment of your escrow shortage. You can also pay all or part of your shortage at **chase.com**.

**Escrow Account History**
The activity for your escrow account from the past year is shown here, along with what we estimated your payments would be. Most shortages occur because taxes and/ or insurance were higher than what was projected on your last year's escrow analysis.

**Expected Escrow Activity for Next Year**
We've calculated what we expect your escrow account balance will be for the coming year, based on your current tax and insurance expenses.

**Expected Escrow Payment for Next Year**
These are the tax and/or insurance amounts we expect to pay in the next 12 months, and when we expect to pay them. If you elect to pay your shortage in monthly payments over the next year, that amount will also be included in your monthly mortgage payments. If you believe information is missing or incorrect, please call us at 1-800-848-9136.



## FREQUENTLY ASKED QUESTIONS

**Why am I getting an Escrow Analysis?**

We run your Escrow Analysis annually so you know the amount of taxes and/or insurance we paid for you this past year with funds from your escrow account. We also include what we expect to pay next year.

**What is an escrow minimum balance?**

For most accounts, the minimum required balance is equal to two months of escrow payments. This minimum balance helps cover any increases in your taxes and/or insurance over the next year.

**Why does my account have a shortage?**

We calculate your monthly escrow payment for the year based on your tax and/or insurance payment amounts at the time your analysis is run. Shortages most frequently occur when your taxes and/or insurance increase during the year. We pay the higher amount due for you. This can create a shortage because we're paying out more than we expected.

**What do I need to do about this shortage?**

You have options:

- You can pay all of the shortage now.
- You can pay part of the shortage now.
- We can spread the shortage payment evenly across next year's mortgage escrow payments.
- Please note that your escrow payment may still go up, even if you pay all of the shortage, if your tax and/or insurance expenses have gone up.

## ESCROW RESOURCES

- To use our interactive tool and understand how paying part or all of an escrow shortage affects your account, visit **chase.com/EscrowAnalysis.**
- For answers to more questions and to watch our informational video, visit **chase.com/Escrow.**
- Schedule a payment for all or part of your escrow shortage at **chase.com.**
- To stay informed about activity from your escrow account throughout the year, sign up for free escrow alerts at **chase.com/Alerts.**

 ©2015 JPMorgan Chase & Co.



**Note**     ORIGINAL



**State of Pennsylvania**

June 3, 2011
[Date]
106 S BALTIMORE ST, FRANKLINTOWN, PA 17323
[Property Address]

**1. Parties.** *"Borrower"* means each person signing at the end of this Note, and the person's successors and assigns. *"Lender"* means JPMorgan Chase Bank, N.A. and its successors and assigns.

**2. Borrower's Promise to Pay; Interest.** In return for a loan received from Lender, Borrower promises to pay the principal sum of one hundred ninety seven thousand two hundred-two and 00/100 Dollars (U.S. $197,202.00), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of four and one-quarter percent (4.250%) per year until the full amount of principal has been paid.

**3. Promise to Pay Secured.** Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the *"Security Instrument."* The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4. Manner of Payment.**

**(A) Time.** Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on August 1, 2011. Any principal and interest remaining on the first day of July, 2026, will be due on that date, which is called the "Maturity Date."

**(B) Place.** Payment shall be made at P.O. Box 78420, Phoenix, AZ 85062-8420 or at such place as Lender may designate in writing by notice to Borrower.

**(C) Amount.** Each monthly payment of principal and interest will be in the amount of U.S. $1,483.51. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to This Note for Payment Adjustments.** If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge ☐ Growing Equity Allonge ☐ Other [specify]

**5. Borrower's Right to Prepay.** Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6. Borrower's Failure to Pay.**

**(A) Late Charge for Overdue Payments.** If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of four percent (4.000%) of the overdue amount of each payment.

**(B) Default.** If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance

FHA Multistate Fixed Rate Note
VMP®
Wolters Kluwer Financial Services

Initials: _A/_     Page 1 of 2

remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses.** If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. Waivers.** Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. Giving of Notices.** Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. Obligations of Persons Under This Note.** If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note. This is a contract under seal and may be enforced under 42 PA. C.S. Section 5529(b).

This is a contract under seal and may be enforced under 42 PA. C.S. Section 5529(b).

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

**Borrower**

_____  $C/3/11$

**ANTHONY VASCO III**        Date
                            *Seal*

Pay to the Order of **MID FIRST BANK**
Without Recourse
JPMorgan Chase Bank, N.A.
By: _____
Christopher Emanuel / Assistant Secretary

FHA Multistate Fixed Rate Note
VMP®
Wolters Kluwer Financial Services

Recording Requested By/Return To:
**JPMORGAN CHASE BANK, N.A.**
**CHASE RECORDS CENTER**
**RE: COLLATERAL TRAILING**
**DOCUMENTS**
**PO BOX 8000**
**MONROE, LA 71203**
**(800) 848-9380**

This Instrument Prepared By:
**JPMORGAN CHASE BANK, N.A.**
**3415 VISION DRIVE**
**COLUMBUS, OHIO 43219-6009**

**Parcel Identification Number:**

�â–ˆâ–ˆâ–ˆâ–ˆâ–ˆâ–ˆâ–ˆ

———————————————— [Space Above This Line For Recording Data] ————————————————

# MODIFICATION AGREEMENT

**FHA Case Number** ████████████

**Loan Number** ████████████

This Modification Agreement ("Agreement") will become effective on: 1ST day of JANUARY, 2023, between ANTHONY VASCO III AND KELLY R VASCO ("Borrower") and Lender or Servicer (the "Lender"). JPMORGAN CHASE BANK, NA whose address is:
CHASE, 780 KANSAS, FLOOR 2, MONROE, LOUISIANA 71203-4774

This agreement amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed ("Security Instrument"), dated JUNE 03, 2011 and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real property described in the Security Instrument and defined therein as the "Property", located at:

<u>106 S BALTIMORE ST, FRANKLINTOWN, PENNSYLVANIA 17323</u>
(Property Address)

If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

The real property described being set forth as follows:
Modification Effective Date: JANUARY 01, 2023
Original Mortgage Amount: $197,202.00
**LEGAL DESCRIPTION:**

MODIFICATION AGREEMENT - BAU MOD GLOBAL
ver. 11_25_2022_11_51_18

*(page 1 of 10 pages)*

Loan Number ████████████

THE LAND REFERRED TO IS SITUATED IN THE COUNTY OF YORK, BOROUGH OF FRANKLINTOWN AND STATE OF PENNSYLVANIA, DESCRIBED AS FOLLOWS: THE FOLLOWING DESCRIBED PROPERTY: ALL THAT CERTAIN TRACT OF LAND, WITH THE IMPROVEMENTS THEREON ERECTED, SITUATED ON THE EASTERN SIDE OF BALTIMORE STREET IN FRANKLINTOWN BOROUGH, YORK COUNTY, PENNSYLVANIA, MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING AT A POINT ALONG THE EASTERN SIDE OF BALTIMORE STREET AT THE NORTHWEST CORNER OF PROPERTY OF ROY HESS (FORMERLY CALVIN S. GRAHAM AND WIFE), AND THENCE IN AN EASTWARDLY DIRECTION ALONG LANDS OF SAID ROY HESS A DISTANCE OF 198 FEET, MORE OR LESS, TO THE WESTERN SIDE OF PRIVATE ALLEY; THENCE NORTHWARDLY ALONG THE WESTERN SIDE OF SAID ALLEY A DISTANCE OF 190 FEET, MORE OR LESS, TO A POINT AT THE WESTERN SIDE OF SAID ALLEY AT CORNER OF LANDS NOW OR FORMERLY OF JAMES LAU; THENCE IN A WESTWARDLY DIRECTION ALONG LANDS OF SAID JAMES LAU A DISTANCE OF 198 FEET, MORE OR LESS, TO A POINT ALONG THE EASTERN SIDE OF SAID BALTIMORE STREET; THENCE SOUTHWARDLY ALONG THE EASTERN SIDE OF SAID BALTIMORE STREET A DISTANCE OF 190 FEET, MORE OR LESS, TO THE POINT AND PLACE OF BEGINNING. BEING THE SAME PARCEL CONVEYED TO ANTHONY VASCO III AND KELLY R. VASCO FROM MAX H. BULLARD, BY VIRTUE OF A DEED DATED 4/26/2006, RECORDED 5/1/2006, IN DEED BOOK 1807, PAGE 7975, AS INSTRUMENT NO. 2006033290, COUNTY OF YORK, STATE OF PENNSYLVANIA. PARCEL ID: ████████████

REFERENCE NUMBERS OF DOCUMENTS MODIFIED
RECORDED JUNE 17, 2011 BOOK 2130 PAGE 7717 INSTRUMENT NO. 2011028877

Tax Parcel No: ████████████

If my representations in Section 1 continue to be true in all material respects, then the provisions of Section 2 of this Agreement will, as set forth in Section 2, amend and supplement (i) the Security Instrument, and (ii) the Note. The Security Instrument and Note together, as may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement have the meaning given to them in the Loan Documents.

If required, I have provided confirmation of my financial hardship and documents to permit verification of all of my income to determine whether I qualify for the offer described in this Agreement. This Agreement will not take effect unless and until the Lender signs it. I further understand and agree that the Lender will not be obligated or bound to make any modifications of the Loan Documents if I fail to meet any of the requirements under this Agreement.

1. **My Representations**. I represent to the Lender and agree:
   A. I am experiencing a financial hardship and, as a result, am either in default under the Loan Documents or a default is imminent.

   B. The Property is neither in a state of disrepair, nor condemned.

   C. There has been no impermissible change of ownership of the Property since I signed the Loan Documents. A permissible change of ownership would be any transfer that the Lender is

MODIFICATION AGREEMENT - BAU MOD GLOBAL
ver. 11_25_2022_11_51_18



(page 2 of 10 pages)

**Loan Number** ████████

required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage.

D. I am not a party to any litigation involving the Loan Documents, except to the extent I may be a defendant in a foreclosure action.

E. If required, I have provided documentation for all income that I earn.

F. All documents and information I provide pursuant to this Agreement are true and correct.

**2. The Modification**. The Loan Documents are hereby modified as of **JANUARY 01, 2023** ("Modification Effective Date"), and all unpaid late charges are waived. The first modified payment will be due on the date set forth in this Section 2:

A. The Maturity Date will be: **DECEMBER 01, 2052**.

B. The modified principal balance of my Note will include all unpaid amounts and arrearages (excluding unpaid late charges) and may include amounts toward taxes, insurance, or other assessments. The new principal balance of my Note is **$66,080.16** ("New Principal Balance").

C. Interest will begin to accrue on the New Principal Balance of **$66,080.16** as of **DECEMBER 01, 2022**. The first new monthly payment on the New Principal Balance will be due on **JANUARY 01, 2023**, and monthly on the same date thereafter.

The payment schedule for the modified Loan is as follows:

Interest will accrue on the New Principal Balance at the rate of **7.125%** annually. The monthly payment amount for principal and interest will be **$445.19**, which is an amount sufficient to amortize the New Principal Balance over a period of **360** months.

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal & Interest Payment Amount | Estimated Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins on | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 30 | 7.125% | 12/01/2022 | $445.19 | $407.51, may adjust periodically | $852.70, may adjust periodically | 01/01/2023 | 360 |

The above terms in this Section 2.C shall supersede any provisions to the contrary in the Loan Documents, including, but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable-rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only option, or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule

MODIFICATION AGREEMENT - BAU MOD GLOBAL
ver. 11_25_2022_11_51_18

████████
*(page 3 of 10 pages)*

████████

**Loan Number** ▮▮▮▮▮▮▮▮

for my modified Loan will be the minimum payment due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

If my loan is a daily simple interest loan or an average daily balance loan, I understand and agree that interest will accrue daily and payments will be applied as of the date received by the Lender according to the terms of the Loan Documents. Interest accrues by applying the ratio of the annual interest rate over the number of days in the year (365 or 366 in a leap year), multiplied by the principal balance, multiplied by the actual number of days the principal balance is outstanding.

All payment amounts specified in this Agreement assume that all payments will be made on the payment due date throughout the life of the loan. If I pay before or after the payment due date, the amount of interest will vary and, if my payment is an amortizing payment, the amount allocated between interest and principal will vary. For example, if I pay a monthly amortizing payment after the due date, more of the payment will go toward interest and less toward principal. As a result, the principal may be reduced more slowly over the term of the loan, and there could be a principal balance due at the maturity date of the loan. All accrued and unpaid interest will be applied before any amounts are applied toward principal.

Despite any scheduled payment shown in this Agreement, at any scheduled interest rate adjustment date, my monthly payment will be adjusted to an amount necessary to repay the remaining unpaid balance as of the interest rate adjustment date in substantially equal monthly installments of principal and interest over the remaining term of the loan, assuming I pay on the due date. The Lender will not accept multiple monthly payments in advance of their due date.

D. Any amounts remaining unpaid under the Loan Documents, will be paid by the earliest of the date I sell or transfer an interest in the Property, subject to Section 3.E below, the date I pay the entire New Principal Balance, or the Maturity Date.

E. I will be in default if (i) the monthly payments are not made in full by the payment date, or (ii) I do not comply with the terms of the Loan Documents, as modified by this Agreement. If a default rate of interest is permitted under the current Loan Documents, then in the event of default, the interest that will be due on the New Principal Balance will be the rate set forth in Section 2.C.

3. **Additional Agreements**. I agree to the following:
   A. That this Agreement shall supersede the terms of any modification, forbearance, or workout plan, if any, that I previously entered into with the Lender.

   B. To comply, except to the extent that they are modified by this Agreement, or by the U.S. Bankruptcy Code, with all covenants, agreements, and requirements of the Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, impounds, and all other payments, the amount of which may change periodically over the term

MODIFICATION AGREEMENT - BAU MOD GLOBAL
ver. 11_25_2022_11_51_18

*(page 4 of 10 pages)*

**Loan Number** ███████████

of my Loan. This Agreement does not waive future escrow requirements. If the Loan includes collection for tax and insurance premiums, this collection will continue for the life of the Loan.

C. That the Loan Documents are composed of valid, binding agreements, enforceable in accordance with their terms.

D. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, or by the U.S. Bankruptcy Code, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, or by the U.S. Bankruptcy Code, the Lender and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents.

E. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without the Lender's prior written consent, the Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, the Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If the Lender exercises this option, the Lender shall give me notice of acceleration. The notice shall provide a period of no less than 30 days from the date the notice is delivered or mailed within which all sums secured by the Mortgage will come due. If payment of these sums is not made prior to the expiration of this period, the Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

F. If any document is lost, misplaced, misstated, or inaccurately reflects the true and correct terms and conditions of the Loan Documents as amended by this Agreement, within ten (10) days after my receipt of the Lender's request, I will execute, acknowledge, initial, and deliver to the Lender any documentation the Lender deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s). If I fail to do so, I will be liable for any and all loss or damage which the Lender reasonably sustains as a result of my failure.

G. All payment amounts specified in this Agreement assume that payments will be made as scheduled.

H. That, if Borrower is in an active bankruptcy case upon execution of this document, Borrower will cooperate fully with Lender in obtaining any required Bankruptcy Court and trustee approvals in accordance with local court rules and procedures. Borrower understands that if such approvals are not received, then the terms of this Agreement will be null and void. If this Agreement becomes null and void, the terms of the original Loan Documents shall continue in full force and effect and such terms shall not be modified by this Agreement.

I. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

MODIFICATION AGREEMENT - BAU MOD GLOBAL
ver. 11_25_2022_11_51_18

J.  If the Borrower(s) received a discharge in a Chapter 7 bankruptcy subsequent to the execution of the Loan Documents, the Lender agrees that such Borrower(s) will not have personal liability on the debt pursuant to this Agreement. If Borrower(s) is in an open bankruptcy case but has not yet received a discharge, then this Agreement is not intended as an attempt to collect a debt. Rather the agreement is intended to modify the Loan Documents to enable the Borrower(s) to continue making voluntary payments and retain the Property.

K.  That in agreeing to the changes to the original Loan Documents as reflected in this Agreement, the Lender has relied upon the truth and accuracy of all of the representations made by the Borrower(s), both in this Agreement and in any documentation provided by or on behalf of the Borrower(s) in connection with this Agreement. If the Lender subsequently determines that such representations or documentation were not truthful or accurate, the Lender may, at its option, rescind this Agreement and reinstate the original terms of the Loan Documents as if this Agreement never occurred.

L.  I acknowledge and agree that if the Lender executing this Agreement is not the current holder/controller or owner of the Note and Mortgage, that such party is the authorized servicing agent for such holder/controller or owner, or its successor in interest, and has full power and authority to bind itself and such holder/controller and owner to the terms of this modification.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

MODIFICATION AGREEMENT - BAU MOD GLOBAL
ver. 11_25_2022_11_51_18

*(page 6 of 10 pages)*

**Loan Number** ▮▮▮▮▮▮

**TO BE SIGNED BY BORROWER ONLY**

**BORROWER** SIGNATURE PAGE TO MODIFICATION AGREEMENT BETWEEN JPMORGAN CHASE BANK, NA And ANTHONY VASCO III AND KELLY R VASCO, LOAN NUMBER ▮▮▮▮▮▮ WITH A MODIFICATION EFFECTIVE DATE OF JANUARY 01, 2023

In Witness Whereof, the Borrower(s) have executed this agreement.

The undersigned hereby acknowledge that the signatures below include the Borrowers on the Loan, and those of any non-borrower co-owner(s) of the Property, or a non-borrower spouse or domestic partner of a Borrower with rights of dower/curtesy/homestead and/or community property under applicable law. Such additional persons are signing solely to evidence their agreement that all of their right, title and interest in the Property is subject and subordinate to the terms and conditions of this Agreement and the Loan Documents.

_____      Execution Date: 12 , 5 , 2022
**ANTHONY VASCO III**
(Must be signed exactly as shown above)

_____      Execution Date: 12 / 5 / 2022
**KELLY R VASCO**
(Must be signed exactly as shown above)

MODIFICATION AGREEMENT - BAU MOD GLOBAL
ver. 11_25_2022_11_51_18

*(page 7 of 10 pages)*

**Loan Number** ███████████

State of **PENNSYLVANIA**
County of __Cumberland__
    **Enter County Here**

On this, the __5th__ day of __December__ , __2022__ , before me, the undersigned officer, personally appeared **ANTHONY VASCO III and KELLY R VASCO**, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seals.

Place Seal Below

Commonwealth of Pennsylvania - Notary Seal
Paul D. Murphy-Ahles, Notary Public
Cumberland County
My commission expires August 11, 2024
Commission number 1376964
Member, Pennsylvania Association of Notaries

_____
Notary Signature

__Paul D. Murphy-Ahles__
Notary Printed Name

Title of Officer: Notary Public

My Commission Expires: __08-11-2024__

MODIFICATION AGREEMENT - BAU MOD GLOBAL
ver. 11_25_2022_11_51_18

███████████
*(page 8 of 10 pages)*

Loan Number [REDACTED]

**TO BE SIGNED BY LENDER ONLY**  Micfirst Bank Attorney-infact for

**LENDER** SIGNATURE PAGE TO MODIFICATION AGREEMENT BETWEEN JPMORGAN CHASE BANK, NA And ANTHONY VASCO III AND KELLY R VASCO, LOAN NUMBER [REDACTED] WITH A MODIFICATION EFFECTIVE DATE OF JANUARY 01, 2023

In Witness Whereof, the Lender has executed this Agreement.

Lender

Micfirst Bank, attorney-in-fact for)
✓ **JPMORGAN CHASE BANK, NA**

By: _____

Printed Name:     **Blake Hendley**

Execution Date:     **MAR 2 0 2023**
_____

MODIFICATION AGREEMENT - BAU MOD GLOBAL
ver. 11_25_2022_11_51_18



*(page 9 of 10 pages)*

Loan Number ▮▮▮▮▮▮▮

~~State of LOUISIANA~~ Oklahoma *ka*
~~Parish of OUACHITA~~ County of Oklahoma *ka*

On this **20** day of **March**, **2023**, before me personally appeared
**Blake Hendley**, to me known to be the person (or persons)
described in and who executed the foregoing instrument, and acknowledged that he (or they) executed it as his
(or their) free act and deed.

_____
Notary Public

**KRISTON NOELLE AHLEFELD**
**NOTARY PUBLIC**
**STATE OF OKLAHOMA**
**Commission # 19000861 Expires 01/24/27**

Printed Name **Kriston Noelle Ahlefeld**

~~Ouachita Parish, Louisiana~~ *ka* Oklahoma County, Oklahoma
~~Lifetime Commission~~ *ka*

Commission Expires: **JAN 2 4 2027**

[Notary Seal]

MODIFICATION AGREEMENT - BAU MOD GLOBAL
ver. 11_25_2022_11_51_18

*(page 10 of 10 pages)*



**YORK COUNTY RECORDER OF DEEDS**
**28 EAST MARKET STREET**
**YORK, PA 17401**

*Laura Shue - Recorder*
*Tina M. Channell - Deputy*

**Instrument Number - 2023012071**          Book - 2774   Starting Page - 7993
**Recorded On 4/6/2023 At 9:50:44 AM**          * Total Pages - 11
* **Instrument Type - MODIFICATION OF MORTGAGE**
  **Invoice Number**
* **Grantor - VASCO, ANTHONY III**
* **Grantee - JPMORGAN CHASE BANK NA**
  **User**          * Received By:  ERECORD
* **Customer - FIRST AMERICAN TITLE INSURANCE COMPANY**

* **FEES**

| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| RECORDING FEES | $25.00 |
| PIN NUMBER FEES | $10.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| ROD ARCHIVES FEE | $3.00 |
| TOTAL PAID | $40.50 |

| York County UPI Certification |
|---|
| On April 6, 2023 By JV |

**PARCEL IDENTIFICATION NUMBER**

Total Parcels: 1

I Certify This Document To Be
Recorded In York County, Pa.



Recorder of Deeds

*THIS IS A CERTIFICATION PAGE*
# PLEASE DO NOT DETACH
*THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT*

**\* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.**

Book: **2774** Page: **8003**



*YORK COUNTY RECORDER OF DEEDS*
*28 EAST MARKET STREET*
*YORK, PA 17401*

*Randi L. Reisinger - Recorder*
*Bradley G. Daugherty - Deputy*

**Instrument Number - 2011028877**
**Recorded On 6/17/2011 At 12:55:51 PM**
**\* Instrument Type - MORTGAGE**
**Invoice Number**
**\* Grantor - VASCO, ANTHONY III**
**\* Grantee - JPMORGAN CHASE BANK N A**
**User - MAG**
**\* Customer - SIMPLIFILE LC E-RECORDING**

**\* FEES**

| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $23.50 |
| RECORDING FEES | $31.00 |
| AFFORDABLE HOUSING | $11.50 |
| PIN NUMBER FEES | $10.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| ROD ARCHIVES FEE | $3.00 |
| **TOTAL PAID** | **$81.50** |

**Book - 2130   Starting Page - 7717**
**\* Total Pages - 14**

**\* Received By:**

**PARCEL IDENTIFICATION NUMBER**

**Total Parcels: 1**

I Certify This Document To Be
Recorded In York County, Pa.

Recorder of Deeds

*THIS IS A CERTIFICATION PAGE*
## *PLEASE DO NOT DETACH*
*THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT*

\* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.

Book: **2130**  Page: **7730**

**Return To:** JPMorgan Chase Bank, N.A.
Collateral Trailing Documents
P.O. Box 8000 - Monroe, LA 71203

**Prepared By:** Sherrill Smith
1820 E Sky Harbor Circle S Flr 2
Phoenix, AZ 85034

Premises: 106 S BALTIMORE ST,
FRANKLINTOWN, PA 17323

# Mortgage

**Commonwealth of Pennsylvania** _____



THIS MORTGAGE ("Security Instrument") is given on June 3, 2011. The Mortgagor is ANTHONY VASCO, III AND KELLY R. VASCO, HIS WIFE, THEIR HEIRS AND ASSIGNS ("Borrower"). This Security Instrument is given to JPMorgan Chase Bank, N.A., which is organized and existing under the laws of the United States, and whose address is 1111 Polaris Parkway, Floor 4J, Columbus, OH 43240 ("Lender").

Borrower owes Lender the principal sum of one hundred ninety seven thousand two hundred-two and 00/100 Dollars (U.S. $197,202.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on July 1, 2026.

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to the Lender the following described

FHA Mortgage-PA
VMP®
Wolters Kluwer Financial Services



property located in York County, Pennsylvania: See Attached which has the address of 106 S BALTIMORE ST [Street], FRANKLINTOWN [City], Pennsylvania 17323 [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted

FHA Mortgage-PA
VMP®
Wolters Kluwer Financial Services



by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction

FHA Mortgage-PA
VMP®
Wolters Kluwer Financial Services



of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

FHA Mortgage-PA
VMP®
Wolters Kluwer Financial Services

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

### 9. Grounds for Acceleration of Debt.

**(A) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(B) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with

FHA Mortgage-PA
VMP®
Wolters Kluwer Financial Services

the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(C) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(D) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(E) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

FHA Mortgage-PA
VMP®
Wolters Kluwer Financial Services

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(B). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of

FHA Mortgage-PA
VMP®
Wolters Kluwer Financial Services

Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this Paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

FHA Mortgage-PA
VMP®
Wolters Kluwer Financial Services



**18. Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 18, including, but not limited to, attorneys' fees and costs of title evidence. If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

**19. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waivers.** Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**21. Reinstatement Period.** Borrower's time to reinstate provided in Paragraph 10 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**22. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**23. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider       ☐ Growing Equity Rider       ☐ Other [specify]
☐ Planned Unit Development Rider    ☐ Graduated Payment Rider

FHA Mortgage-PA
VMP®
Wolters Kluwer Financial Services

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

**Borrower**

_____     6/3/11
**ANTHONY VASCO III**        **Date**
                                                  *Seal*

Kelly R Vasco     6/3/11
**KELLY R VASCO \***        **Date**
*\*Non-Applicant Title Holder*          *Seal*


_____     **Date**
*Witness*


_____     **Date**
*Witness*


FHA Mortgage-PA
VMP®
Wolters Kluwer Financial Services

**Acknowledgment**

**State of Pennsylvania**

**County of York**

On June 3, 2011 ___, before me Teresa M. Klinedinst ___, the
undersigned officer, personally appeared

Anthony VASCO II
Kelly R. VASCO, His Wife, Their Heirs And Assigns.

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged that he/she (they) executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

_Teresa m Klinedinst_
Notary Public     Teresa M. Klinedinst
My commission expires:
4/28/2012

NOTARIAL SEAL
TERESA M KLINEDINST
Notary Public
NORTH CODORUS TWP, YORK COUNTY
My Commission Expires Apr 28, 2012

FHA Mortgage-PA
VMP®
Wolters Kluwer Financial Services

**Certificate of Residence**

I, Jamie Woodring                    , do hereby certify that the correct address of the
within-named Mortgagee is 1111 Polaris Parkway, Columbus, OH 43240

Witness my hand this June 8, 2011

_____
**Agent of Mortgagee**

Jamie Woodring

FHA Mortgage-PA
VMP®
Wolters Kluwer Financial Services



## Exhibit A

The following described property:

All that certain tract of land, with the improvements thereon erected, situated on the Eastern side of Baltimore Street in Franklintown Borough, York County, Pennsylvania, more particularly described as follows:

Beginning at a point along the Eastern side of Baltimore Street at the Northwest Corner of Property of Roy Hess (formerly Calvin S. Graham and wife), and thence in an Eastwardly direction along lands of said Roy Hess a distance of 198 feet, more or less, to the Western side of private alley; thence Northwardly along the Western side of said alley a distance of 190 feet, more or less, to a point at the Western side of said alley at corner of lands now or formerly of James Lau; thence in a Westwardly direction along lands of said James Lau a distance of 198 feet, more or less, to a point along the Eastern side of said Baltimore Street; thence Southwardly along the Eastern side of said Baltimore Street a distance of 190 feet, more or less, to the point and place of beginning.

Being the same Parcel conveyed to Anthony Vasco III and Kelly R. Vasco from Max H. Bullard, by virtue of a Deed dated 4/26/2006, recorded 5/1/2006, in Deed Book 1807, Page 7975, as Instrument No. 2006033290, County of York, State of Pennsylvania.





**YORK COUNTY RECORDER OF DEEDS**
**28 EAST MARKET STREET**
**YORK, PA 17401**

*Laura Shue - Recorder*
*Tina M. Channell - Deputy*

**Instrument Number - 2022063363**　　　　　　Book - 2761   Starting Page - 5068
**Recorded On 12/13/2022 At 3:34:51 PM**　　* Total Pages - 4
**\* Instrument Type - ASSIGNMENT OF MORTGAGE**
**Invoice Number** ▮
**\* Grantor - VASCO, ANTHONY III**
**\* Grantee - MIDFIRST BANK**
**User** ▮　　　　　　　　　　　　　　　　　　* **Received By:  ERECORD**
**\* Customer - JPMORGANCHASE - EP4**

**\* FEES**

| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $40.25 |
| RECORDING FEES | $13.00 |
| PIN NUMBER FEES | $10.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| ROD ARCHIVES FEE | $3.00 |
| TOTAL PAID | $68.75 |

| **York County UPI Certification** |
|---|
| **On December 13, 2022 By AML** |

**PARCEL IDENTIFICATION NUMBER**

▮

Total Parcels: 1

I Certify This Document To Be
Recorded In York County, Pa.



*Laura Shue*
Recorder of Deeds

*THIS IS A CERTIFICATION PAGE*
# PLEASE DO NOT DETACH
*THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT*

\* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.

RECORDING REQUESTED AND PREPARED BY:
**JPMorganChase - eP4**
**700 Kansas Lane**
**MC 8000**
**Monroe LA 71203**
**(318)432-6157**
AND WHEN RECORDED MAIL TO:
**JPMorganChase - eP4**
**700 Kansas Lane**
**MC 8000**
**Monroe, LA 71203**

---

## ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **JPMORGAN CHASE BANK, N.A. 700 Kansas Lane MC 8000, MONROE, LA 71203**, by these presents does convey, assign, and transfer and set over to: **MidFirst Bank, a Federally Chartered Savings Association, 999 NW Grand Boulevard, Suite 100, Oklahoma City, OK 73118**, the following described Mortgage, with all interest, all liens, and any rights due or to become due thereon. Said Mortgage for **$197,202.00** is recorded in the State of **PENNSYLVANIA,** County of **York** Official Records, dated **06/03/2011** and recorded on **06/17/2011**, as Instrument No. **2011028877** in Book No. **2130**, at Page No. **7717**

Original Mortgagor: **ANTHONY VASCO III AND KELLY R VASCO**
Original Mortgagee: **JPMORGAN CHASE BANK, N.A.**
Property Address: **106 S BALTIMORE ST FRANKLINTOWN, PA 17323**
Municipality: **FRANKLINTOWN BOROUGH**
Legal Description: **SEE EXHIBIT A ATTACHED**
Parcel Tax ID: ███████████████

Date: *12-7-2022*

**JPMORGAN CHASE BANK, N.A.**

Name: _____Denise Raff_____

Title: _____Vice President–Doc Execution_____

STATE OF **Louisiana** _____ } s.s.

PARISH OF **Ouachita** _____

On ___12-7-2022___ before me appeared _____Denise Raff_____ to me personally known, who did say that s/he/they is (are) the _____Vice President–Doc Execution_____ of **JPMORGAN CHASE BANK, N.A.** and that the instrument was signed on behalf of the corporation (or association), by authority from its board of directors, and that s/he/they acknowledged the instrument to be the free act and deed of the corporation (or association).

Witness my hand and official seal.

Notary Public: _____

_____Eva Reese_____

My Commission Expires: _____Lifetime_____

Commission #: _____17070_____

Eva Reese
Ouachita Parish, Louisiana
Lifetime Commission
Notary Public ID# 17070

I do certify that the precise address of **MidFirst Bank, a Federally Chartered Savings Association is 999 NW Grand Boulevard, Suite 100, Oklahoma City, OK 73118**

Attested By:

_____Denise Raff_____

Loan #: ███████████

## EXHIBIT A - LEGAL DESCRIPTION

The following described property:

All that certain tract of land, with the improvements thereon erected, situated on the Eastern side of Baltimore Street in Franklintown Borough, York County, Pennsylvania, more particularly described as follows:

Beginning at a point along the Eastern side of Baltimore Street at the Northwest Corner of Property of Roy Hess (formerly Calvin S. Graham and wife), and thence in an Eastwardly direction along lands of said Roy Hess a distance of 198 feet, more or less, to the Western side of private alley; thence Northwardly along the Western side of said alley a distance of 190 feet, more or less, to a point at the Western side of said alley at corner of lands now or formerly of James Lau; thence in a Westwardly direction along lands of said James Lau a distance of 198 feet, more or less, to a point along the Eastern side of said Baltimore Street; thence Southwardly along the Eastern side of said Baltimore Street a distance of 190 feet, more or less, to the point and place of beginning.

Being the same Parcel conveyed to Anthony Vasco III and Kelly R. Vasco from Max H. Bullard, by virtue of a Deed dated 4/26/2006, recorded 5/1/2006, in Deed Book 1807, Page 7975, as Instrument No. 2006033290, County of York, State of Pennsylvania.

Assessor's Parcel No: █████████